We'll hear argument next in case 24777, Urias-Orellana v. Bondi. Thank you, Mr. Chief Justice, and may it please the Court. Deciding whether undisputed facts qualifies persecution under the law involves legal interpretation, not fact-finding. Even the BIA agrees. It treats the issue as a question of law subject to de novo review. That should not change when a case reaches federal court. Indeed, the government concedes that courts must exercise independent judgment when establishing auxiliary legal principles for use in future cases. They concede that courts have no deference in interpreting the INA's persecution standard. And courts have repeatedly established auxiliary legal principles on things like sexual violence, religious persecution, economic deprivation, and beyond. But courts did not establish those principles by pondering the term persecution in the abstract. They interpreted the law by applying the persecution standard to particular sets of undisputed facts. The government wants you to hold that de novo review applies any time a case supposedly would make new law, in some sense, but substantial evidence review when it wouldn't. There's no principal way to draw that line, and this Court has never tried in similar circumstances. For instance, de novo review applies to all fair use determinations made on undisputed facts and all antitrust determinations made on undisputed facts, not just some special subset. The government's contrary rule here would invite further confusion and collateral litigation. Better instead to just require de novo review and let judges get to judging. The courts of appeals are well-equipped for the job. Several of them already have experience reviewing de novo, the BIA's persecution determinations, and they generally review the analogous question whether undisputed facts demonstrate torture under the Convention Against Torture. The sky has not fallen. Under both the INA's text and U.S. Bank, courts should decide for themselves whether undisputed facts establish persecution under the law. Section 1252B explicitly provides for legal deference on closely related issues, but not this one. And decades of experience confirms that courts perform crucial legal work in applying the INA's persecution standard. Deference to the BIA is unwarranted. I welcome the Court's questions. Elias Zacharias was also a persecution case, and that was reviewed deferentially. How is this different? Because Elias Zacharias concerned a different element of the asylum eligibility analysis. The Elias Zacharias, the disputed issue there, was about the persecutor's subjective motive, their intent. That is a classic, pure question of fact. And so Elias Zacharias was absolutely right to review that factual determination for substantial evidence. The statute before the court in Elias Zacharias, which was the predecessor to Section 1252B4, also it didn't say the asylum eligibility determination across the board. It applied only to findings of fact. And that's what this statute says as well. So we think the government is just over-reading that decision. And the government doesn't really – I think you may be under-reading it. There was no factual dispute in that case. Everyone agreed on what the guerrillas said to the petitioner. There was no dispute about what was said or what happened. Instead, the question was whether those undisputed facts met the standard of persecution, quote, because of political opinion. So I don't see how that's not a mixed question of law and fact and mostly a factual question. No, Justice Sotomayor. The dispute in that case was about whether the – as you said, was whether the persecution was done on account of the noncitizen's political opinion or something else. That is a question about what was in – But there was no dispute about the facts. What was said was undisputed. And so the question was, did that meet the level of because of? No, Justice Sotomayor. The facts of the case, what was said, what was done, as Justice Gorsuch pointed out in the earlier argument, subjective intent is something that you infer from facts on the ground. So in a murder case, you might know exactly what happened, who showed up when, who fired first, but I don't think anyone would say that the facts are undisputed in that murder case if we haven't figured out whether the defendant had the intent to kill or not. And that was the same issue in Elias Zacharias. So what's different between what was said or done is undisputed in this case, what he was told, and the question is, did he have a fear for his life? How is that any different from what happened in Elias Zacharias? Because that's actually not the question in this case. This is a past persecution case. Under the INA, a noncitizen is presumptively eligible for asylum if they have suffered persecution in the past. It's not this forward-looking inquiry about whether they have a well-founded fear of persecution going forward. That's a different kind of inquiry, and I agree with Your Honor that it goes to their state of mind. It involves the calculation of a future probability, and so the case for substantial evidence review would be much stronger there. But here, the facts of what happened to my client are undisputed. The immigration judge took his testimony as credible and true and found that the death threats he experienced were indeed credible and menacing, but nevertheless held that under the law they did not rise to the level of persecution. No, but you just said they involve credibility findings. I mean, they're the sort of findings that we typically leave to a district court or another fact finder involving credibility, weighing of facts, and all that sort of things to reach a particular determination. It seems to me a prototypical case for the BIA. No, Your Honor. First of all, the BIA doesn't view it that way. If this were all about determining whose testimony to believe or not, figuring out what happened, deference would be owed to the immigration judge, and the BIA would do the same. That's not how the BIA views this issue. And the reason for that is credibility is not in dispute here. My client was found credible. Whenever you have a set of undisputed facts, credibility has been resolved one way or the other. So we know exactly what happened to my client, and the sole dispute in this case is what is the legal effect of those events? Did it qualify as, quote, persecution within the meaning of Section 1101a42, or did it not? That boils down to a legal inquiry. So if I agree with you that we're talking about a question of law to the extent that what is at issue here is the application of the persecution standard to a known set of facts, all right, I guess what I don't understand about your argument is why the statute doesn't prescribe the standard of review in this situation. I appreciate that you say in your brief that you read C, which definitely requires deference to certain legal determinations. You say, but this is not one of them, and I guess I don't understand that. The language of C says a decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to the law. And in this case, I understood the agency to have determined that your client was not eligible for admission because he had not satisfied the requirements for asylum. So it seems to me to be heartland C, and therefore the statute tells us what the standard of review is supposed to be. No, Your Honor. C is about eligibility for admission. That's a distinct inquiry for eligibility for asylum. I don't think so. Help me to understand that. I mean, it seems to me that there are different grounds for admission, and one of them would be because you satisfied the asylum criteria, and that was what your client was trying to do. So what Congress, I think, is covering here by this broader scope of review or standard of review paragraph is all the kinds of determinations that the agency would need to make related to the eligibility for admission. This is a subset of that. No, Justice Jackson. I mean, number one, the government has not made this argument. They've conceded that C and D do not apply. They do not capture this case. I understand, but I'm not the government. I'm reading the statute. Fair enough, Justice Jackson. And my question is, why does C – it seems to me that when you look at this provision four, it seems as though Congress was really trying to cover the waterfront of determinations that the agency makes regarding admissibility. I mean, it says in terms of telling the courts what you're supposed to do relative to what the agency has determined. It says look at the administrative record, only the record that was before the agency. It says all of their findings of fact are conclusive, which I agree with you. There's no finding of fact at issue here. It says their determinations about whether or not this person is eligible for admission is also conclusive unless it violates the law. That's the matter of law provision. They even go so far as to instruct the courts about the agency's determination with respect to the availability of corroborating evidence. I mean, Congress was really trying to nail it down in terms of what courts are supposed to do. So I guess I'm worried about looking at C and treating it so narrowly that we're suggesting that Congress somehow carved out asylum determinations and did not mean for everything the agency is saying regarding the determination of eligibility for admission to be included. So I'll start with what I agree with in what Your Honor just said, that we do think Section 1252 establishes a reticulated scheme for judicial review that was meant to be comprehensive or close to it. Where I disagree respectfully with Your Honor is that admission somehow encompasses asylum. It does not. But don't you have then the burden, if you agree with me, with the first part of establishing that Congress intended to carve out asylum and not have it be covered by this? Yes, I do. But I think we've shown that. Because again, in D, in 1252b4d, it carves out entitlement to asylum, the second step of the asylum determination. But it doesn't say anything about the first step. And again, C, and perhaps we just disagree on this, but admission is a distinct inquiry from asylum.  Isn't that the first step? That's the first step. And then they go to the second step. No, Your Honor. That's incorrect. You do not need to be admissible to be eligible for asylum. Those are distinct statuses. My clients have conceded removability. They've conceded they were not admissible. But they are claiming, nevertheless, that they are eligible for and ultimately entitled to asylum. Those are distinct inquiries. And again, I understand, Your Honor, it's not the government. But I think that is why the government, to their credit, did not make this argument because that's well-established in this Court's cases. You've heard neither side made that argument, right? I mean, that that's applicable. You've instead appealed to the background rule that questions of law are for the Court to decide de novo, right? That's correct. But we think the inference — Okay. Good enough.  I wonder why you didn't make more of Elias Zacharias. The Court there said — and I take your point that the Court there said the finding of causation could not be reviewed except as a finding of fact. But the Court also said on page 481, it can be reversed only if the evidence presented by Elias Zacharias was such that a reasonable fact-finder would have to conclude that the requisite fear of persecution existed. That's kind of the traditional standard we apply when reviewing jury verdicts. We take the facts in the light most favorable to the victor, and we assess whether, as a matter of law, any reasonable fact-finder could make the conclusion that the jury made. Elias Zacharias seems to suggest the same standard, at least in this sentence, seems to suggest the same standard as applies under the INA. Is that your position? No, we disagree with that, Your Honor, because, again, that sentence you just read from Elias Zacharias is correct as to what that case was about. This inquiry into causation into the subjective state of mind of the persecutor and whether the noncitizen feared — Why wouldn't we apply that same standard under the INA? So we take the facts. Here they're undisputed. We take them as given, and we ask whether any reasonable fact-finder could conclude that that was persecution as a matter of law. Why wouldn't that be the — why wouldn't — if we're going to do de novo legal review, why wouldn't that be the standard we would apply? Because, for example, I'll analogize this case to fair use or antitrust conspiracies, which often go to jury verdicts like it did in Google v. Oracle. In that instance, Your Honor is correct, the reviewing court would construe the record in favor of the verdict. But it would not then ask whether any reasonable fact-finder could have reached the result rendered by the jury. It would review the determination de novo. And that's because the inquiry involved in those instances, despite being record intensive, you have to look at, you know, the particular facts of the case. This court did at length in Google v. Oracle, for example. It's still a fundamentally legal inquiry, or at least a primarily legal inquiry under U.S. Bank. And we know that because, as, again, decades of judicial experience — Well, but the legal inquiry, again, with juries, it is a legal inquiry. But the inquiry is, as I've described it, it isn't, do we think this amounts to, on our own, that's usurping the fact-finding function, we say, of the jury. So we take all the evidence in light, most favorable, and we say, could any reasonable jury conclude those facts are enough? Respectfully, Your Honor, no, you did not do that in the fair use context, in the antitrust context, in icicle seafoods, where the question was whether the particular activities of a group of workers qualified them as seamen under the Fair Labor Standards Act. I'm familiar with the antitrust context, and that's exactly how you review jury verdicts in antitrust cases. The ultimate question of whether an antitrust conspiracy existed, whether there was anti-competitive conduct, that is ultimately reviewed. Viewed in light, most favorable to jury verdict. Could someone conclude this violates Section 2? Could this violate Section 1? That's exactly how we proceed. I don't believe so, Your Honor. And Google v. Oracle, I mean, that one, that's a decision from this court, held the exact opposite. It said, we do not ask whether any reasonable jury could find that there was fair use. We determine, we're construing all of the subsidiary facts in favor of the verdict. But as to the ultimate question of whether those facts demonstrate fair use under the law, the court did not ask whether any reasonable jury could have found fair use. It asked, do we, exercising independent judgment, find fair use? Why didn't you make that as a backup argument? Because I think that's what the First Circuit essentially did in this case. It said, we're taking the facts as given, and we're reviewing the BIA's interpretation of the law for reasonableness. And that's the inquiry that we are asserting in this context is incorrect, because the underlying question is a primarily legal one that should be reviewed de novo by a reviewing court. That's why the BIA itself, I think under that reasoning, should be deferring to the I.J. on this question. The I.J. is the one who sat through the evidence. They've heard the testimony in the record. They're closest to the facts. That's an inquiry that, you know, under U.S. Bank would normally would say, if this is a factual inquiry or a primarily factual inquiry, we should defer to the fact finder. The BIA does not do that. It recognizes that the inquiry is primarily legal, and it warrants exercise of independent judgment by the BIA as the appellate body. And these – Primarily – oh, go ahead. Putting aside what the BIA thinks, why is this primarily legal? Well, if I understand the question here, we have this word persecution, and the question is, how do we apply it to certain threats? And there's a legal rule that says, well, it can't – a threat can be persecution, but only if it's menacing enough to cause actual harm. And that's the legal rule. A threat can be persecution, but only if it's menacing enough to cause actual harm. Now, what's going to happen in this case is we're going to have to look at all this evidence, all these facts, and decide whether these threats were indeed that level of menacing. And that sounds like really weighing evidence to me. That sounds really factual. So we disagree with that, Your Honor, and I think for two primary reasons. I think the persecution inquiry in itself – persecution, that's not a commonplace word, like are two people acting as strangers, like in U.S. Bank, or are people going to have a hardship, like in Wilkinson. It's a term of art. It's the product of a treaty that this country has signed. We're not going straight from the word persecution. We, in fact, do have what U.S. Bank might have thought of as an auxiliary legal principle. And that auxiliary legal principle is it counts as persecution if the threat is sufficiently menacing to cause actual harm. Now, the question in this case doesn't actually have to do with whether that legal principle is right or wrong, should be changed or not. The question in this case is just were these threats that level of menacing? And that's really factual. So I think just one quibble with the question, Your Honor. We actually do dispute the propriety of that legal rule. It's not presently before the court. But when we were stuck –  But as this case comes to us, that legal rule is that legal rule. To an extent – And then I'm just sort of thinking, then you're saying we have all this masses of evidence of what the threats were and who made them and, you know, how serious they were. I don't mean to belittle that. That's an important question. But it's a factual question. We disagree with that, Your Honor, because – I mean, it's a primarily factual question. You're obviously applying law to a set of facts. But what you're going to be doing in the way that the U.S. Bank opinion lays it out is really getting into the nitty-gritty of what the testimony is about what happened. That's true to an extent. But I think the same thing is true in the fair use case. I mean, this Court's opinion in Google v. Oracle was looking at the nature of declaring code. It got extremely in the weeds. Credit to Justice Breyer for doing that. But it's still involved – like, any mixed question is going to involve a close look at the factual record. But I think what the inquiry in U.S. Bank calls for is asking, number one, is this standard something that people have an ordinary common understanding of? I think the answer to that is no. And in addition to that, in applying this standard, is the stock judicial job just to say, oh, persecution, let's look at the facts and determine whether it's persecution? That's not what's happened in the lower courts, and the government doesn't dispute this. Lower courts have developed a slew of auxiliary legal principles related to threats, as Your Honor pointed out, but in a whole bunch of different areas. Religious persecution, sexual violence, I could go on. And what U.S. Bank says is that when that is the case, you don't necessarily look at any given case that comes before the court and say, look, is this a boring case? It's kind of run-of-the-mill, or is this a case that raises some really interesting new issue? No. When courts are developing auxiliary legal principles, all decisions about that mixed question are reviewed de novo. We don't look at a fair use case and say, ah, is this a boring one, or is this a really interesting one presenting novel issues? And I think that's the problem with the government's position. I do want to say one thing. To the government's credit, they've made, I think, a significant concession here that departs from the status quo in a lot of circuits, is that they have at least acknowledged that courts owe no deference to the BIA in interpreting the law, at least in some kind of purely legal sense, and in developing these auxiliary legal principles. And I think if it were the court to announce that and reaffirm it, you know, with a megaphone, I think that would do a lot of good, and it would change how a lot of circuits address these cases. And we think in our case it would warrant a remand to assess whether this requirement of — Mr. Rosalino, do you think that in every instance in which a legal standard, no matter how — no matter the degree of concreteness of the legal standard, is applied to a set of facts that the ultimate determination is a legal question? No, Justice Alito, we don't think that. We think that under this particular statute, when that inquiry looks a lot like an admission eligibility decision or an asylum entitlement decision, but isn't one of those, like we have here, that's a situation where, yes, the application of law to fact would be de novo. My question is similar to Justice Kagan. So the definition of persecution that was applied by the IJ here is, based on First Circuit precedent, is that it must add up to more than ordinary harassment, mistreatment, or suffering. You may have a set of historical facts that are undisputed, but determining whether they add up, whether the totality of those facts satisfies that standard, sure looks to me like primarily a factual question. Why is it not? Because when courts make that decision, they are building out a body of decisional law that guides future cases. If you look at the First Circuit's decision in this case, the IJ's decision in this case, they are analogizing to cases that came before. But that would be true in a vast majority of situations. Do you think the determination of whether — of negligence is a legal standard? No, Your Honor. We would agree that negligence would be something that's reviewed deferentially, but I think there's actually a helpful — But in every case where negligence is found or not found, bilts could be said to build out a body of precedent about whether negligence was shown. Why isn't this similar to that? Because I think negligence, number one, the inquiry there is basically, what should a person have done given the circumstances? The light was red. Should they have braked or accelerated? People have an ordinary sense of that. I think the negligence example is a helpful one because you can contrast it with the duty of care inquiry, which, as this Court well knows, duty is traditionally for the judge, negligence is for the jury. And in the duty context, you do have to get immersed into the record to establish whether there was a duty of care. But if you ask someone on the street, hey, was there a duty of care in this circumstance or that, they're not going to be able to answer that as readily. And courts build out, again, a host of legal principles for different kinds of situations in the duty of care context. And that's what happens when courts apply the persecution standard. They're taking a term of art that's not commonly understood. They're building out these legal principles that courts can then apply and flesh out. Yes, at this kind of medium-high level of establishing auxiliary legal principles, as Justice Kagan was explaining, but then also refining what those auxiliary principles actually mean on the ground. What does it mean for a death threat to be sufficiently menacing to qualify as persecution or not? And, again, that is why the decisions in this case, like in so many others, are looking to these prior decisions to figure out what is the mode of analysis that is applicable to these facts. And if you go to many circuits, in fact, to help their staff attorneys and law clerks have these very detailed outlines explaining prior decisions that came before so that it helps them assist their judges in making correct and efficient decisions that can be squared with the cases that came before them. But the irony in this context is that a lot of those decisions, the ones that are at least denying relief, they're not holding that the BIA's decision was correct as a matter of law. They're just saying that it was reasonable. So you have courts, you have the agency, they're all looking for guidance on this question. They're looking for precedent to use in making their determination, but they don't have a clean set of precedent to do that. They don't have precedent where courts have come in and said, this is, in fact, the correct interpretation of persecution as a matter of law. And that is really the problem here. And, again, courts are already doing the kind of inquiry that we're suggesting here under the Convention Against Torture. In most courts of appeals, if the facts are undisputed and the sole remaining question is whether those facts demonstrate mistreatment rising to the level of torture within the meaning of CAT, they review that termination de novo and they're doing just fine. And that's correct because it builds out a body of precedent that courts can use effectively for future cases. And that is the kind of judicial work that under U.S. Bank we think would counsel in favor of de novo review. And it's the kind of judicial work that makes clear that this inquiry is not a finding of fact within the meaning of Section 1252. Can I ask you a question about how the BIA reviews the IJ? Because that's a good point for you. I agree with the government response that the agency's decisions about how to structure internal review do not determine the standard of the review that courts of appeals should apply, which is determined by statute, constrained by the role of appellate courts, that they go on. But I want to get your clear response to the government on that point. Certainly, Justice Kavanaugh. And, again, we're not here telling you that the BIA's interpretations of these regulations dictate the meaning of the statute. But what's telling is that the regulation on which the BIA relies uses the exact same words as Section 1252b-4. It says findings of fact. And the BIA has said that this exact inquiry is not a finding of fact. And on top of that, the BIA, despite recognizing that immigration judges are in the room, they're hearing the witness's testimony, they've found the evidence, the BIA is still viewing that as something that it is institutionally better positioned to resolve, just like a court is. Thank you. Thank you, counsel. Justice Thomas. Mr. Sotomayor. Counsel, you did not challenge below the legal standard that the First Circuit uses, right? Not explicitly, Your Honor. We've obviously resisted the finding of persecution here. We think that argument. But you didn't say that they've used a wrong definition. I actually don't understand why a credible death threat would not always cause suffering or harm, and the other side will respond to that. But you didn't say that. You've been arguing something quite different. We did not make that argument explicitly before the First Circuit. I think it's fairly subsumed in the question of whether, do these facts as they are demonstrate persecution? And, again, on remand, we would make that argument. As far as I understand the government's position, if you had challenged the standard, they would say that's a legal question that the court would have looked at. Yes. Plus, you didn't. You were actually arguing the facts, that these facts showed enough suffering or harm. I think that's their position. I do think that is the government's position. But, again, below, we were up against a substandard. Do you lose if I accept what the government says? No, Your Honor. Because in the First Circuit, they were they cabined their review entirely to deference to the BIA. And like many other courts of appeals, they have not taken the same position as the review de novo. You're saying we have to look at that question. Correct. We have to decide that. Not in the first instance, but remand so that we can advance it. Maybe the government has a waiver argument. Maybe they argue that we didn't waive it because there was First Circuit precedent on point, but we need to go on bonk. We'll have that fight on remand, but it's not something this Court should resolve in the first instance. Thank you. Justice Kagan? Can I make sure I understand your argument about Elias Zacharias? Because I think that that's – I came in thinking this is a strong argument on the government's side, so I want to understand why you don't think it is. But if I look at Elias, if I look at that footnote, the Court is clearly saying that we're going to provide deference here because, you know, Eli – you know the footnote I'm talking about, right?  Which I can't find. And then the question that they're providing all this substantial deference on is this. It's whether a guerrilla organization's attempt to coerce a person into performing military service necessarily constitutes persecution. So I don't get it. That seems like at least – that seems a very similar question to this one, and they're providing substantial deference. Well, two points there. I think the question that Your Honor finished with of whether there's like a categorical rule that something would qualify as being on account of persecution, I don't actually think that the Court deferred to the BIA in that regard. It analyzed that legal issue for itself. But the underlying question of what was in the persecutors' heads, why were they doing this, that is a classic finding effect. And again, the statute that Elias Zacharias was analyzing, like this one, did not say You're saying that the only thing that Elias Zacharias deferred to was an underlying finding effect as opposed to the application of a legal standard to those facts? I think that's right, Your Honor, because again, what Elias Zacharias was analyzing and the opinion says – makes this clear is that the statute makes motive central. And what the noncitizen had failed to do in that case was come forward with sufficient was on the basis of political opinion. That was the core – that was the molten core of the dispute, and the Court correctly viewed that as a factual issue going to state of mind, and it reviewed that deferentially.  Justice Gorsuch? Justice Kavanaugh? So I think you're saying Elias Zacharias was written more broadly than it needed to be, because as written, it is broader than that. I think there are a few lines that are a little bit more broad, but again, I think that's exactly why this Court has cautioned multiple times. We do not read judicial opinions like statutes. We take them in context. We look at what was the actual question presented. But if we read those lines as written, that's a problem for you? I think it would be a problem for us. But again, we would encourage the Court not to read its opinion like a statute, but read the statute here like a statute, and that's where the government has problems. Second different point. On pages 4 and 40 of the government's brief, as you point out in your reply, they make this – you call it concession about legal arguments. Do you have a – I'm going to ask them this, but do you have a sense of how that's going to apply? I think it's going to be tricky. I mean, again, I do want to commend the government for making that concession, because that is not how courts – many courts of appeals are viewing this issue. They are deferring to the BIA on those kinds of questions. We've cited some cases on our reply brief doing just that. So this Court, again, takes – Your point is that the government's brief is asking for something new as well? That's correct. That's correct. Well, we'll ask them about that. Okay. Thank you. Justice Barrett? Justice Jackson? So as I understand the history of this before, Congress added it to the INA when it enacted ERIRA in 1996. And prior to that, I understood that courts were applying deference, substantial evidence review, to this asylum eligibility question. So if you're right that Congress was silent as to what is supposed to happen with asylum eligibility, I guess I'm trying to wonder whether we shouldn't believe that Congress wanted the preexisting practice to continue. No, Your Honor. That preexisting practice was not – with respect, as Your Honor described. It's true that some aspects, like motive, as was at issue in Elias Zacharias, were reviewed deferentially, as they should be, as they still are today. But if you look at the actual component of the asylum eligibility inquiry that is at the level of persecution, that inquiry – the government has an extended string site on page – footnote 2 of its brief. And those cases are not – by and large, not addressing that issue. They're addressing other issues. They're just referring to – All right. Do you have a corresponding string site of cases pre this provision? Yes. In our reply brief – forgive me, the page number is escaping me, but we've cited a couple of cases that go the opposite direction. And the point here is that the government asked you to grant cert in this case because they agreed with us that the courts were so confused about the appropriate standard of review as to this narrow subcomponent of the asylum eligibility determination. I think it's a – with respect to my friends, it's a little bit rich to say that that confusion that is so entrenched and significant that they supported cert in this case can somehow be resolved on a snapshot consensus at a given point in time. That's just – that consensus did not exist. All right. One more question. I'm going to the kind of overall thrust of your argument. It would be to enable courts to consider this de novo and particularly and possibly override the BIA's determinations. And I guess I'm wondering how that's consistent with what we understand the general thrust of Congress's amendments and the thrust of IRERA to be, which was really to limit the court's ability to override the agency in this context. So it seems like this would be a little discordant with what Congress was trying to do here, right? No, Your Honor. Point number one, asylum has actually been kind of like singled out for special treatment by Congress. If you look at Section 1252A, even the discretionary determination about whether to grant asylum, that's – judicial review over that determination has been preserved even as Congress stripped away judicial review of most other discretionary determinations. And I think what that tells you is that even as Congress is – of course, was limiting judicial review in many respects, it viewed asylum as different and something that needed to be preserved in significant part. And I would also just come back to the fact that we're not vouching for a change here. We're saying that Congress crystallized in Section 1252B4 what had already been the case, is that a determination about whether undisputed facts legally qualifies as persecution is not a finding of fact. Those words, they were in place before IRERA. They're in place now. And the plain meaning of those words does not encompass this determination. Thank you. Thank you, Counsel. Mr. DeSantos. Thank you, Mr. Chief Justice, and may it please the Court. Let me just start by picking up on questions about, like, what the inquiry is that the BIA is making here and what our position is on what the standard is here. So the Courts of Appeals have broadly agreed that persecution means really extreme suffering. So you've got to plug that in, kind of like the Court did in U.S. Bank. So what the agency is asking here is, looking at the evidence that the petitioner has provided, is this extreme suffering? How much suffering has there been? And that is one – a question that requires lots of weighing of facts and drawing of inferences. So in this particular case, just look at the facts here. So on the one hand, petitioner's half-brothers were shot because of a dispute between their father and a – the half-brother's father and a sicario. But then on the other hand, his mother and his stepsister and his stepfather were never threatened or harmed. The half-brothers appeared to have been fine when they moved away from the hometown. Petitioner appears to have been fine when he moved away from the hometown and he lived for years in peace in other parts of El Salvador. Then petitioner talks about the threats. But on the other hand, the threats demanded money. So what do you infer from that? Was it just intimidation? Were they even connected with the sicario? I mean, these are all questions of the kind that go to juries. The juries draw inferences. They can cut in different directions. You have to weigh the facts and inferences. What we're saying here is Congress wanted substantial evidence review to apply so that there is deferential review of that weighing of facts and inferences by the agency. And we think it's very clear for several reasons. Let me just do three quick points. One, we think the text and the history point exactly in that direction. So, one, Congress in section 1158 talked about the question as one that is factual for the trier of fact. Two, this court and Elia Zacharias beforehand had said that that was a factual question and applied substantial evidence review. The courts of appeals had all done that. And then the substantial evidence provision here codified language from Elia Zacharias. So, clearly Congress was aware of it. And there's no way, no realistic chance that when Congress was overhauling standards of review in IRA and affirmatively overturning what courts of appeals were doing in certain respects and then codifying Elia Zacharias, that it was either unaware of that practice or silently departing from it. It's just not realistically possible. And the second point, I'll do even more quickly, this court's standard approach, even if you thought the statute were less clear, the standard approach that the court uses across a variety of contexts points in exactly the same way. The work being done here is primarily factual. And just last year in Wilkinson, this court applied that approach to the INA and said that application of extraordinary hardship is going to be a primarily factual inquiry that is subject to deferential review. And the last thing I'll say is, petitioners' contrary arguments, they really kind of all boil down to the idea that every mixed question in the INA is going to be subject to de novo review. I think this court, both in Guerrero-Lasprilla and Wilkinson, said that wasn't going to be the consequence. And I think that would be a sea change and irreconcilable with IRA. I welcome that. Thank you, counsel. I'm sorry. No, that's okay. Your friend began the argument by saying there were not, in fact, factual determinations. What precise facts do you think would be necessary to resolve? So I think here the ultimate fact is the one that's at issue, is how much suffering was there. So, for example, I'll point the court to, like, the decision in TSC Industries about materiality. There are all kinds of situations in which juries get a question like, was the statement material, or pain and suffering, or negligence? And you have historical facts that could be undisputed, like here there were these threats, and we know what was said. But then what do you infer from that? How much suffering was there? How do you balance the fact that he was fine when he moved away from his hometown versus the fact that he was threatened several times and the threateners asked for money? And that kind of weighing is one for the BIA. Now, if Petitioner succeeds in the argument that no reasonable fact finder, no matter how you weigh the evidence against him, no matter what inferences you draw against him, no reasonable fact finder could have found that there was no persecution, then he would win. Isn't that a legal question? That question, when you draw all of the inferences, yeah. And that's what we say should be done. So that's a legal question that judges can review under that preexisting standard that Elias Zacharias speaks of. That's correct, and that is our position. And also you concede on page 40, as Justice Kavanaugh pointed out, that if there's some dispute about what the term persecution means as a matter of law, that a court can resolve that de novo. Yes, that's right. And just to pick up on Justice Kavanaugh's earlier question about how that would work, I think this is very similar to what courts of appeals do in all kinds of contexts and, in fact, what they are doing under the INA. So think of the example of a district court. There are all kinds of decisions that district courts make that are subject to abusive discretion review or clear error, and all the time litigants come and they say, okay, so here are my arguments on abusive discretion and clear error. But setting aside the way that the district court cashed out my particular facts, the district court used the wrong standard, and that is a legal question, and you have to correct the legal standard de novo. And the courts of appeals distinguish those things all the time. Would I be right, Mr. Dos Santos, to say that I could say the same of your position that you just said to Mr. Rossellini? You said he would have every mixed question turn into a de novo question. But would you have every mixed question be given substantial evidence review? No, Your Honor. I think you could look at the way that this court talked about it in U.S. Bank. Not all mixed questions are alike. So what kinds of mixed questions would not get substantial evidence review with respect to these matters? With respect to what, I'm sorry? These matters. So I don't have any examples to give you in that respect. I think a lot of what is done is going to be factual in the immigration space. If there are legal questions that turn on interpretation of a particular definition, like a reticulated definition, and the primary work being done is interpreting, looking at a statute, looking at structure, looking at legislative history, and so on, which is not what's at issue here, then it looks more primarily factual. The other thing I'll say is one of our arguments is that Congress treated this as factual. So if there were evidence that Congress treated something else as more legal, then that would cut the other way. But, I mean, here, if you look at Section 1158, Congress said — I don't get that argument, I have to say, Mr. DeSantis, because it seems you have some good arguments in this case, but honestly, none of them come from the text. You have good history arguments. You have arguments about the Elias Zacharias case. But 1158, just because we call NIJ a trier of fact, you're going to read that to determine what the standard of review is? I mean, you just said that we don't give substantial evidence review to legal questions. If we took your textual arguments seriously, we'd have to give substantial evidence review to legal questions, too, because, after all, 1158 calls the IJ a trier of fact. So I think what we're saying about 1158 is the thrust of the way Congress thought about the refugee question, is someone a refugee, is that it's primarily factual. And so the way that it described the way that an applicant sustains the burden, that's the title of the provision, to show that they're a refugee was by saying that they have to satisfy the trier of fact, not only that their evidence is credible, not only that it's persuasive, but that it's sufficient to show that. And then goes on to say, and the way that the trier of fact does that is by weighing the testimony, weighing the other evidence. And that, combined with Congress's codification of Elias Zacharias, taking that same language and plugging it into the substantial evidence review provision, combined with the history before that, I mean, I think it all just makes clear that the way Congress was thinking about it is these are primarily factual inquiries that the IJ is going to make that we want to have the Attorney General take care of. And then...  Did you say at the beginning that extreme suffering is the essential standard here? Yes. I think every court of appeals essentially has said persecution... Is that a legal question, what extreme suffering means? No, I think that's the kind of inquiry that's going to just... You look at the totality of the circumstances. I think it's kind of a concept that most people can grasp, and you're going to have to, in each case, just look at all of the facts and say, was this extreme enough? How much suffering was there here? But I think that suggests that you really can never have cases that serve as precedents for others or that the court is not actually developing law in the area. And that's my concern. I mean, I understand questions of fact that arise out of disputes over what happened. So if we had a situation, not this case, but if, in this case, there was some question about whether he was actually threatened, the government had some evidence that showed that what this person who was seeking asylum said happened to him wasn't true, all of those things would be questions of fact, that the trier of fact would be charged with determining. But then, once we have the established body of facts, you move to another stage, which is determining whether or not this body of facts meets a certain legal standard, whether it's persecution or some other standard in this area of the law. There are many legal standards in immigration law. And I guess I'm just concerned about the suggestion that in this second stage where we have settled on the facts and we're deciding whether or not, or the agency has decided whether or not the legal standard is met, that we're somehow now in a world that is not a question of law. So that's because, like this Court has said several times, when there's a mixed question, it's not just the historical facts. It's what inferences you draw from them and how you weigh them. And that's traditionally the province of the jury, like this Court said in TSC Industries, where the Court said it's not proper to do summary judgment for the materiality question when, even if you take the historical facts, there's going to have to be inferences drawn and weighing. And the other thing I'll say is that it's not the case that the legal principles go totally undeveloped. I think that's totally belied by experience over decades. There are lots of times when courts of appeals, in the course of applying substantial evidence review, will either say, one, petitioner wins, so as a matter of law, no matter how you weigh this, then you have this rule of law. But also, in the course of saying that, they'll provide broad guideposts. Like, for example, in general, mere threats are usually not going to be enough. Well, could we develop the law, too, as we do with jury verdicts, and say some set of facts cannot be reasonably, by any fact finder, reach the conclusion of persecution? That's right. So that is the, it's exactly in the same way that you would review a jury verdict. Well, we can develop the law that way. That's right. But what about the very limited circumstances that our friends on the other side point out, like fair use doctrine under the copyright statute, that we will review de novo without that kind of gloss? Yeah, I think the court has said that when the background, I should say, just to back up, to sort of make clear what the inquiry is here, in the U.S. Bank, sort of how do we decide what kind of standard of review to put something in, there are a couple of different important considerations. The low star is what kind of work is there, primarily factual or legal. But then there's also, you consider the background, what's the tradition been here, and whether it's constitutional or not. With those kinds of questions, the ones you're referring to, I think the court has looked to. The history of this is that it developed de novo in a common law sort of way. Fair use was usually done by judges. Right. It developed that way. And so if Congress has then talked about it, we presume that Congress was treating it that way. That's not the case with these kinds of determinations. The tradition cuts exactly the opposite way. I'm a little confused by your answer to Justice Gorsuch. You said what a definition of persecution could be a legal error if that's what they were challenging, correct? That's right. All right. So here, if they had said, why do you need to show suffering at all? If it's a death threat, why isn't that standing on its own suffering? The threat itself doesn't cost you suffering or harm. You see your mother or your father killed in front of you.     You suffer from their death, but you're not suffering from the threat. So as Petitioner, I think, admitted, they didn't make that argument about the legal standard. So the only question was applying the First Circuit's own precedent.  So in answer to Justice Gorsuch, you then said that it was a legal question of whether any reasonable fact finder would have said this was not prosecution. And you said that's a legal question. Correct? Applying the standard that the circuit had already announced. Yes. Yes. So I think what the other side is saying is the First Circuit, I'm not sure what they're saying, whether they're saying the First Circuit didn't apply that standard at all. No. The First Circuit definitely applied the standard. Everybody applied that standard from First Circuit cases. The IJA, the BIA, and the First Circuit itself. No, no. The standard being that no reasonable fact finder would have said this was prosecution. It's a little easier to put it in the positive rather than the negative. I think Petitioner agrees that the First Circuit applied that rule, which is substantial evidence.  Which is Alia Zacharias. Thank you. Why does the BIA review these kinds of questions, DeNovo? Yeah. So I think understanding what the regulation actually says, which is different from what my friend... I'm just curious why. So if I could give you a little background, it would make more sense. What the underlying rationale is for that. Yes. I think the history is very helpful here. So before 2002, the BIA was reviewing everything, DeNovo, including facts. I got the history. I'm just, like, what is the reason? Oh, okay. It makes sense why, like Judge Collins said, why something that's treated as a question of law transforms into a question of  So here's where I was going. It's not that it's a question of law. What the regulation says is we're going to stop the DeNovo thing. We're going to do clear error for facts. But we don't want that to mean that judgments and questions of discretion are not subject to DeNovo review. And it said judgments include decisions about whether the applicant has shown past persecution. That's telling me what the regulation is. I'm still trying to get at it. My answer is because it's a question of judgment, and both the BIA and the IJ share the responsibility to exercise... What's the difference between a question of judgment and a  question of law? Because judgment is... In this context. So the question about weighing facts and determining whether it's persecution, it's going to involve judgment. And both the BIA and the IJ have expertise in looking at recurring fact patterns and seeing all kinds of different versions of these cases, far more cases than any court of appeals is ever going to see. And as this court recognized in Mingda Hai and Orlando Ventura, in many cases, the agency has expertise here to apply to deciding those questions. So the AG decided, you know, we'll do clear error, but I'm going to reserve more review for these judgment questions. That doesn't mean that Congress wanted courts of appeals engaging in that kind of judgment in the first instance. And as was already said and admitted, the way that the BIA engages in review, the way that the AG designs internal review has no bearing on that. For example, the BIA reviews questions of discretion, DeNovo. No one thinks the court of appeals should do that. It reviewed facts.    If we repeat what you write in your brief on page 4, do you think the lower courts are already doing that? Yes, I do. I think they were doing that before IRIRA. I think they're doing that now. I think it's standard practice where if a petitioner says, look, regardless of the way my facts cash out, the BIA stated the wrong standard and used a standard that's incorrect. That is a question that courts review DeNovo. And to show that the standard is incorrect, the BIA has to     review it. If the standard is incorrect, again, on extreme suffering, what would you have to say? We think extreme suffering is too high a bar. So there have been questions that have come up. So, like, one that happened earlier was, is evidence that there's lots of crime in my country and I'm very likely to be a victim of crime, is that relevant to persecution? And the court said, no, that's not relevant to persecution. That's legal? So, like, if the court says, no, that's not relevant to    persecution, is it ever relevant, right? Is it ever going to be relevant to persecution? Legal question. It's not, like, look at the facts of my case. It's, like, this is the standard. And there are other questions like that where questions about whether the standard should be lower in certain circumstances and so on. So the other thing I just want to emphasize is that this court in Wilkinson really already talked about this some and cited the U.S. Bank sort of formulation and said, look, we're going to look at this and apply it there and said, application of the term extreme hardship, which is kind of very analogous to the question of extreme suffering, that that is going to be something that is primarily factual and reviewed deferentially. I think the petitioner's contrary arguments are really saying the thing that this court was resisting in both Guerrero, La Spria, and in Wilkinson, which is that every mixed question, no matter how factual it is in the INA, is going to be subjected to no vote review. I mean, that really would not be the case. And so I think that would be a sea change, and it's really irreconcilable with IRIRA. The other thing that I'll note, as Justice Jackson, you pointed out, I mean, the thrust of IRIRA was Congress was coming in and then overturning things that courts of appeals were doing. I don't think there's any realistic chance that you could look at IRIRA and think that Congress was silently departing from the substantial evidence review consensus for persecution questions and asylum eligibility generally in adopting IRIRA. Unless there are any further questions. This is Thomas. Thank you, counsel. Mr. Rossellini, rebuttal. Thank you, Mr. Chief Justice. Just a few points. The first one is that our position is not that every mixed question in the immigration context would be reviewed de novo. Under the text of the statute, our argument is that the question is only that mixed questions that are, that resemble the determinations at issue in C&D, admission eligibility, and entitlement to asylum, would get de novo review, because if the language Congress could have used is right there if they didn't use it. We think that inference is strong as to this particular question. But other things, such as equitable tolling in Guerrero La Spria, other kind of docket management determinations, for example, those would be reviewed for abuse of discretion. Of course, if the government came in and tried to say that those are findings of fact, we would again disagree, but we wouldn't dispute that they're entitled to do so. So we think that the government could have used a different definition of deference, just a different kind. And then if you are looking beyond the text, just to U.S. Bank, that analysis is really limited to just this particular mixed question at issue here. And as U.S. Bank makes clear, the court has to look at each particular mixed question that comes before it and make the call. So that decision on those grounds would be even narrower. I think it's telling that the government couldn't come up in response to, I believe it was Justice Kagan, asked what about would any mixed question in this context get de novo review and they couldn't name one? I think that's because if this one doesn't come up, it's hard to think of an example. Persecution, again, it is a term of art. It's not something that ordinary people understand right off the bat. It's the product of a major international treaty. And we have decades of experience where courts are coming up with the exact kind of auxiliary legal principles that U.S. Bank talked about as a marker of a mixed question that deserves de novo review. Even though it can, yes, some aspects of the decision can be fact intensive. They involve a close look at the record. But courts are also doing what courts do when they analyze this mixed question. And that's what separates this particular mixed question from others. Second, Justice Kavanaugh, to your question about the BIA regulations. The government is trying to couch this determination of the question of judgment versus law. They don't cite anything for that. We have BIA decisions calling it a question of law. But it really doesn't matter. Because the fundamental point is that the BIA agrees that it's not a finding of fact, which is the exact language we have in this statute. And the BIA agrees that the IJ's institutional advantages of being closer to the evidence don't justify deference to the IJ on this particular question. So this debate about judgment versus question of law, it's just immaterial. Fourth, on Elias Zacharias and the history, Justice Jackson, your question, if you look at page 12 of our reply in note 2, we cite examples of cases analyzing this exact mixed question that predate ERA-ERA that were reviewed de novo. The case law, as it is now, is a muddle. So I'm not going to pretend that there was some consensus going in our favor. But we don't need to show that. The government is trying to tell you that there was a consensus that was somehow overruled by Congress. That's not the case. And on Elias Zacharias more broadly, we would just reiterate that the actual dispute in that case was about motive. It was about a subjective state of mind. And the decision needs to be read in that context. And if it's read as the government says it is, number one, the government concession doesn't make sense. Because Elias Zacharias, if you take a couple lines at face value, says the entire asylum eligibility determination must be reviewed deferentially. But they're admitting that even legal questions about the auxiliary legal principles are reviewed de novo. So that just can't be right. And we think trying to draw that line about where do interesting cases that are creating auxiliary legal principles, where do those end and where do the fact-intensive ones start, you just can't draw that principle line. And this Court has never tried to do that when it's analyzed other mixed questions, like in U.S. Bank, like in Google v. Oracle, and other cases. But finally, even if the Court does try to draw that line and accept the government's position, it's not going to work.  It's not the case that Courts of Appeals are doing what the government says is correct. Some are, but some are not. If you look at page three of our reply brief, we cite a Tenth Circuit decision and a Fourth Circuit decision that said, look, we acknowledge that the BIA has created this legal rule, but the Tenth Circuit said we can't disagree with that legal rule unless we can overcome the substantial evidence review. And the Fourth Circuit ultimately disagreed with the BIA, but only because it found that this reply brief was wrong.    And the requirement of showing significant actual harm was manifestly contrary to law. So it, too, was deferring on what even the government admits is a legal question that should be reviewed de novo. So if the Court, even if it sides with the government here, we believe that is an important change. It's clarified the standard of review that will matter going forward, and it should matter in this case. And we should be entitled to a vacater of the judgment below, at least on those narrow grounds. Thank you, Counsel. The case is submitted.